IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **MARGARET SHIELDS,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action Number |
| v. ) | **7:12-cv-00927-AKK** |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **ACTING COMMISSIONER OF** ) | |
| **SOCIAL SECURITY** ) | |
| **ADMINISTRATION,** ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Margaret Shields brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the adverse decision of the Administrative Law Judge ("ALJ"), which has become the final decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the ALJ's decision is supported by substantial evidence, and, that she applied the correct legal standards. Consequently, the court will **AFFIRM** the decision denying benefits.

**I. Procedural History**

Shields protectively filed her applications for Title II disability insurance benefits and Title XVI supplemental security income on January 26, 2010, alleging

1

a disability onset date of October 5, 2009, (R. 140-145), due to the effects of an on-the-job back injury, tendonitis and knee problems, (R. 193). After the SSA denied her application on April 13, 2010, (R. 72-73), Shields requested a hearing, (R. 80-84). At the time of the hearing on July 22, 2011, Shields was forty-three years old, (R. 26, 34), and had a high school education with one year of college, (R. 194). Shields had past relevant light, unskilled work as a fast food worker; light, unskilled work as a housekeeper; light, semi-skilled work as a cashier; light, unskilled work as a store laborer; medium, skilled work as a school deputy; light, semi-skilled work as a general office clerk; and light, semi-skilled work as a substitute teacher. (R. 25). Shields has not engaged in substantial gainful activity since October 5, 2009, the alleged onset date. (R. 12).

The ALJ denied Shields's claim on September 9, 2011, (R. 10-27), which became the final decision of the Commissioner when the Appeals Council refused to grant review on January 25, 2012, (R. 1–6). Shields then filed this action pursuant to 42 U.S.C. § 1383(c)(3). Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker,* 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen,* 847 F.2d 698, 701 (11th Cir. 1988);

*Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id.* (citing *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin,* 849 F.2d at 1529 (quoting *Bloodsworth,* 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin,* 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb,* 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(I)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to

prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater,* 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, Shields alleges disability because of pain, she must meet additional criteria. In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart,* 921 F.2d 1221, 1223 (11th Cir. 1991). Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id.* However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, *neither requires objective proof of the pain itself.* Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard *a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself.* See 20 CFR §§ 404.1529 and 416.929; *Hale [v. Bowen,* 831 F.2d 1007, 1011 (11th Cir.1987) ].

*Elam v. R.R. Ret. Bd.,* 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Moreover, "[a] claimant's subjective

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt,* 921 F.2d at 1223. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence.

*Hale,* 831 F.2d at 1012. Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability. *Id.*

### IV. The ALJ's Decision

In performing the Five Step sequential analysis, the ALJ initially determined that Shields had not engaged in substantial gainful activity since the alleged onset of her disability, and therefore met Step One. (R. 12). Next, the ALJ acknowledged that Shields's severe impairments of degenerative changes of the lumbar spine/spinal stenosis and degenerative changes of the left knee met Step

Two. (R. 13). The ALJ then proceeded to the next step and found that Shields did not satisfy Step Three since she "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." *Id.* Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel,* 800 F.2d at 1030, the ALJ proceeded to Step Four, where she determined that Shields "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with a sit/stand option and she is limited to unskilled tasks." (R. 13). Based on this assessment of Shields's RFC, the ALJ determined Shields was unable to perform her past relevant work. (R. 25). Lastly, in Step Five, the ALJ considered Shields's age, education, work experience, and RFC, and determined, based on the Medical Vocational Guidelines found in 20 C .F.R. Part 404, Subpart P, Appendix 2 and on the testimony of a vocational expert ("VE"), that "there are jobs that exist in significant numbers in the national economy that [Shields] can perform." (R. 26). Because the ALJ answered Step Five in the negative, she determined that Shields was not disabled. (R. 27).

## V. Analysis

The court now turns to Shields's contentions that the ALJ failed to (1) properly credit the opinion of consultative examiner, Dr. Richard Rex Harris and (2) comply with Social Security Ruling ("SSR") 96-8p, SSR 83-12 and SSR 96-9p

in his RFC determination. *See* Doc. 8 at 1-2. The court addresses these contentions in turn.

**A.     Dr. Harris's Opinion**

Shields argues that the ALJ improperly discredited examining physician Dr. Harris's opinion that she could not work for more than five hours in a workday, while crediting his opinion that she could perform "light to sedentary work in the work place." (R. 353). The court finds this argument unpersuasive.

The ALJ may discount a treating physician's opinion for "good cause." *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists if the physician's opinion is not supported by evidence; the evidence supports a contrary finding; the physician's opinion is conclusory; or the physician's opinion is inconsistent with the doctor's own medical records. *See Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004); 20 C.F.R. § 404.1527. An examining physician is generally entitled to less weight than a treating physician. *See* 20 C.F.R. § 404.1527(c)(1)–(2). Thus, the reasons to discount a treating physician's opinion can also be used to discount an examining physician's opinion.

The ALJ provided the necessary good cause for rejecting Dr. Harris's opinion that Shields could only work for 5 hours in a work day, i.e. it is inconsistent with the Dr. Harris's other findings and the other evidence in the record. As the ALJ explained,

> In combination, [Dr. Harris's] limitations only allowed for a five-hour work period in an eight hour workday which is inconsistent with his opinion [that] the claimant retained the ability to perform work activity in the light to sedentary level. It appears those limitations were a reflection of [Shields's] reported ability and not a true reflection of her functional capacity. Support for this conclusion is found in the remainder of his assessment, which supports his opinion she could perform work activity in the light to sedentary level.
>
> Of note, [Shields] was able to occasionally reach overhead, reach all others, handle, finger, feel and push/pull with both hands. She could climb stairs, ramps, ladders, or scaffolds but could occasionally balance, stoop, kneel, crouch, and crawl. … She could perform numerous other activities, consistent with a light to sedentary level. She could perform activities like shopping. She can travel without the a [sic] companion for assistance. She can ambulate without using a wheelchair, walker, or 2 canes or 2 crutches. She can walk a block at a reasonable pace on rough or uneven surfaces. She can use standard public transportation. She can climb a few steps at a reasonable pace with the use of a single hand rail. She can prepare a simple meal and feed herself. She can care for personal hygiene. She can sort, handle, and use paper/files.

(R. 18-19).

Shields contends that these parts of the assessment do not conflict with Dr. Harris's opinion because "none of them address[] the duration of the activities." (Doc. 8 at 7). However, none of Dr. Harris's examination addresses the duration of activities. *See* (R. 353). If the court accepted Shields's reasoning, then nothing in Dr. Harris's examination would support his opinion on the duration that Shields can work. Therefore, the court is not persuaded by Shields's argument that the ALJ erred by discounting Dr. Harris's conclusory opinion. *See Phillips*, 357 F.3d at 1240-41.

Significantly, the other evidence in the record also provided substantial evidence for the ALJ to credit instead the portion of Dr. Harris's opinion that stated that Shields could perform light work. As the ALJ explained,

> The undersigned has given substantial weight to Dr. Harris' opinion that [Shields] is capable of light to sedentary work in the workplace …. This opinion is well-supported by his own clinical examinations and testing, the medical imaging results of record, the formal functional assessment, the opinion of Dr. Atkins, … and is generally consistent with the record as a whole.

(R. 25).[2] The ALJ's finding is consistent with the medical record which shows that after Shields's on-the-job back injury, an October 19, 2009 MRI of her lumbar spine revealed two small disc protrusions and an early bilateral L5-S1 facet degeneration. (R. 255). In November 2009, Shields saw Dr. Brian S. Claytor at the University Orthopaedic & Spine Center for her back pain. Dr. Claytor opined that "[h]er MRI, really, is underwhelming without any obvious signs of neurocompression[,] and I do not detect any evidence of radiculopathy on history or physical exam." (R. 319). He referred Shields to physical therapy, limited her to light work with four to six hours a day of standing or walking, and prescribed her Mobic, Flexeril and Ultram. (R. 319-320). In a December follow-up exam, Dr. Claytor noted that the lumbar strain was improving with physical therapy and continued her medication. (R. 321-322).

---

[2] As the Commissioner notes, it appears the ALJ meant Dr. Claytor rather than Dr. Atkins. Dr. Atkins briefly treated her knee contusion, (R. 323, 413), while Dr. Claytor has a long history of treating her back pain, see (R. 319, 471). Doc. 9 at 10.

Shields returned to see Dr. Claytor with continued back pain on February 8, 2010. (R. 412). Dr. Claytor opined that Shields was "not willing to make any effort to return to work." (*Id.*) Consequently, he decided not to refill Shields's prescriptions, continued her light duty restrictions and arranged for a Functional Capacity Evaluation ("FCE") and impairment rating. (*Id.*) The March 5, 2010 impairment rating evaluation indicated that "the impairment due to the October 2009 low[er] back injury is 0%." (R. 426). Thereafter, when, on April 27, 2010, Dr. Julian Magee performed the FCE, (R. 418-425), Dr. Magee noted that Shields's "Validity Criteria" was only 61%, indicating that she was not putting forth maximum effort. (R. 418). He also stated that Shields laughed and joked around in a manner inconsistent with her alleged pain rating (eight out of ten) and could bend her knee despite allegations to the contrary. (*Id.*) Dr. Magee concluded: "[T]he parameters on this evaluation are not felt to be reflective of maximal effort based on the multiple discrepancies previously noted. Therefore[,] I'm unable to determine if the patient is capable for return to work." (R. 420). He did, however, find that Shields's "present strength and functional capacities meet guidelines for the Light physical demand levels." (R. 419).

In June 2010, after reviewing the results of the FCE and impairment rating, Dr. Claytor concluded that Shields was at maximum medical improvement, and released her back to work per FCE guidelines and stopped prescribing her pain

medication. (R. 415). In August 2010, Shields returned complaining of continued back pain and asked to return to physical therapy. (R. 416). Dr. Claytor requested two or three more weeks of physical therapy but was "not willing to start her back on any sort of narcotic medications." (*Id*.)

Shields returned to Dr. Claytor in March 2011 after reinjuring her back while working at Burger King. (R. 437). An MRI of the lumbar spine revealed "a left paracentral disc protrusion at L4-5." (R. 471). Although Dr. Claytor noted that this new MRI appeared to represent a change from Shields's previous MRI, he opined that she did not display radicular symptoms and would not benefit from surgical intervention. (*Id*.) He sent Shields back to physical therapy and limited her to light duty with "one to two hours of standing or squatting and no lifting of more than 15 pounds." (*Id*.) As is evident, nothing in Dr. Claytor's treatment history suggests that Shields suffers from a disabling condition. In fact, the record shows that Dr. Claytor doubted Shields's contention to the contrary.

Ultimately, here, Dr. Harris provided two conflicting opinions on Shields's capacity to perform work. The ALJ considered these opinions and determined which opinion was more consistent with Dr. Harris's own evaluation, other physicians' – including a treating physician – opinions, and the medical evidence in the record. Because the ALJ's determination is supported by substantial evidence, the court will defer to her conclusions.

The court is also not persuaded by Shields's contention that SSR 96–8p prohibits the ALJ from "reject[ing] [a physician's function-by-function] assessment in favor of [the physician's] broader statement of exertional levels." Doc. 8 at 8. In making this contention, Shields misreads SSR 96-8p, which provides:

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

1996 WL 374184. In other words, in making the RFC determination, the ALJ "must first identify the individual's functional limitations or restrictions." *Id*. It does not require the ALJ to only credit medical opinions that first identify functional limitations. Instead, SSR 96-8p states that, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id*.; *see also* 20 C.F.R. § 404.1545. As discussed, the ALJ explained why she rejected the relevant portion of Dr. Harris's opinion, and the ALJ's reasons are supported by substantial evidence.

**B.     RFC Finding**

Next, Shields avers that ALJ's RFC finding is overly broad and fails to comply with SSR 96-8p, SSR 83-12 and SSR 96-9p. The court disagrees for the reasons stated below.

13

First, as to Shields's contention that the ALJ's RFC assessment did not include a function-by-function assessment, the court notes that SSR 96–8p requires that an ALJ needs to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945." 1996 WL 374184. To satisfy this requirement, the ALJ must assess the claimant's functional limitations and restrictions and then express the functional limitations in terms of exertional levels. *See Castel v. Comm'r of Soc. Sec.*, 355 Fed. App'x 260, 263 (11th Cir. 2009); *Freeman v. Barnhart*, 220 Fed. App'x 957, 959–60 (11th Cir. 2007). Based on the court's review of the record, here, like in *Freeman*, "[w]hile the ALJ could have been more specific and explicit in [her] findings, [she] did consider all of the evidence and found that it did not support the level of disability [Shields] claimed." 220 Fed. App'x. at 960; *Castel*, 355 Fed. App'x at 263 ("The ALJ found that the [light] level work determination was consistent with the medical evidence."); (R. 13-25). Accordingly, the ALJ complied with SSR 96–8p.

Shields's secondary contention that the ALJ's failure to "define the sit/stand opinion included in the RFC" does not satisfy the requirements of SSR 96-9p, doc. 8 at 9, derives also from a misunderstanding of SSR 96-9p. A cursory review of the title of SSR 96-9p makes clear that it has no application here – "Policy

14

Interpretation Ruling Titles II and XVI: Determining Capability to do Other Work – Implications of a Residual Functional Capacity *for Less than a Full Range of Sedentary Work*." 1996 WL 374185 (emphasis added). In the present case, the ALJ found Shields could perform light work, which is distinct from a RFC for less than a full range of sedentary work. (R. 13); *see* 20 C.F.R. 404.1567(b). Therefore, Shields's contention is unavailing. Moreover, even assuming SSR 96-9p applies, it states that "[t]he RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing." 1996 WL 374185. In similar circumstances, the Eleventh Circuit has found that "what's typically called a sit/stand option" created "the reasonable implication … that the sit/stand option would be at [the claimant's] own volition." *Williams v. Barnhart*, 140 Fed. App'x 932, 937 (11th Cir. 2005). Similarly, the reasonable implication of a person "capable of performing light work activity with a sit/stand option" is that the option would be as needed. (R. 67). Shields also has not pointed the court to any evidence that her sitting and/or standing limitations would preclude her from performing the jobs, cited by the VE and ALJ, of garment sorter, inspector, and inserter. *Williams*, 140 Fed. App'x at 937 ("[The claimant] failed to offer any evidence that he could not perform the unskilled jobs identified by the [VE] based on his ability to sit or stand for any period of time.").

Finally, Shields asserts that the combination of SSR 83-12 and a sit/stand option precludes work.  Doc. 8 at 10.  However, this contention is also based on an incomplete reading of the SSR.  Specifically, while Shields is correct that SSR 83-12 states that "most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task [and that] [u]nskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will," *id*. (citing 1983 WL 31253), Shields ignores the very next sentence, which states that "[i]n cases of unusual limitation of ability to sit or stand, a [VE] should be consulted to clarify the implications for the occupational base."  1983 WL 31253.  At the administrative hearing, the VE testified that she relied on her "experience as a vocational rehabilitation counselor" to determine that a sit/stand option would not preclude Shields from working.  (R. 67-71).  Thus, the ALJ properly determined Shields's RFC in accordance with SSR 83-12.  *See Jones v. Apfel*, 190 F.3d 1224, 1230 (11th Cir. 1999) ("[A]n ALJ may rely solely on the VE's testimony.").

In short, contrary to Shields's contentions, the ALJ's RFC determination did not violate SSR 96-8p, SSR 96-9p or SSR 83-12.  Therefore, the ALJ committed no reversible error.

## VI. Conclusion

Based on the foregoing, this court concludes that the ALJ's determination that Shields is not disabled is supported by substantial evidence and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. The court will enter a separate order to that effect simultaneously.

**DONE** the 29th day of May 2014.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE